J-A12017-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| INVESTORS COMMERCIAL CAPITAL LLC, SERVICING AGENT FOR THE BANK | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| UNKNOWN HEIRS, DEVISEES, ETC. CLAIMING RIGHT, TITLE OR INTEREST FROM OR UNDER HENRY A. KOPACZ, DECEASED AS MORTGAGOR AND KOPACZ IRREVOCABLE FAMILY TRUST, AS REAL OWNER | |
| Appellants | Nos. 1565 EDA 2015 |

Appeal from the Judgment Entered April 20, 2015
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): May Term, 2012 No. 001837

| | |
|---|---|
| INVESTORS COMMERCIAL CAPITAL, LLC | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| UNKNOWN HEIRS, DEVISEES, SUCCESSORS, PERSONAL REPRESENTATIVES, ASSIGNS OF, AND ALL PERSONS, FIRMS, OR ASSOCIATIONS CLAIMING RIGHT, TITLE, OR INTEREST FROM OR UNDER, HENRY A. KOPACZ, DECEASED, AND KOPACZ IRREVOCABLE FAMILY TRUST, AS REAL OWNERS AND MORTGAGORS | |
| Appellees | Nos. 1886 EDA 2015 |

Appeal from the Judgment Entered April 20, 2015

J-A12017-16

In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): May Term, 2012 No. 001837

BEFORE:  BENDER, P.J.E., PANELLA, J., and STEVENS[*], P.J.E.

JUDGMENT ORDER BY PANELLA, J.              **FILED SEPTEMBER 15, 2016**

Unknown Heirs, Devisees, Etc. Claiming Right, Title or Interest from or under Henry A. Kopacz, Deceased as Mortgagor and Kopacz Irrevocable Family Trust, as Real Owner (the "Kopacz Appellants") and Investors Commercial Capital LLC, Servicing Agent for the Bank (the "ICC Appellants") cross-appeal from the judgment entered after a non-jury verdict granting foreclosure to the ICC Appellants on April 20, 2015.[1] The Kopacz Appellants challenge the trial court factual and legal conclusions supporting the verdict in favor of the ICC Appellants. The ICC Appellants allege that the trial court erred in failing to include post-verdict interest in the March 4, 2015 verdict. We affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] These appeals have been consolidated. The parties purport to appeal from the verdict entered on March 4, 2015, the denial of post-trial motions on April 16, 2015, and the entry of judgment entered on April 20, 2016. **See** Notices of Appeal, 6/4/15 and 7/1/15. This is simply incorrect. "Orders denying post-trial motions … are not appealable. Rather, it is the subsequent judgment that is the appealable order when a trial has occurred." **Harvey v. Rouse Chamberlin Ltd.**, 901 A.2d 523, 525 n.1 (Pa. Super. 2006) (citations omitted). Here, judgment was entered by praecipe on April 20, 2015. Despite their errors, this Court will address the appeals because judgment has been entered on the verdict. **See Mount Olivet Tabernacle Church v. Edwin L. Wiegand Division**, 781 A.2d 1263, 1266 n.3 (Pa. Super. 2001). We have corrected the caption accordingly.

- 2 -

The trial court accurately summarized the history of this case. *See* Trial Court's Findings of Fact and Conclusions of Law, dated 3/4/15, at 1-29. Therefore, a detailed recitation of the factual and procedural history is unnecessary. We review a verdict following a non-jury trial as follows.

> Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, where the issue … concerns a question of law, our scope of review is plenary.

*Stephan v. Waldron Elec. Heating and Cooling, LLC*, 100 A.3d 660, 664 (Pa. Super. 2014) (citation and brackets omitted). Further, it is well-established that the fact-finder is free to accept or reject the testimony of both expert and lay witnesses, and to believe all, part of none of the evidence. *See Terwilliger v. Kitchen*, 781 A.2d 1201, 1210 (Pa. Super. 2001).

On appeal, the Kopacz Appellants have consolidated the 14 issues raised in their Rule 1925(b) statement into six claims of error. The ICC Appellants have raised one issue on appeal. The trial court, in its September 22, 2015 opinion, as well as its March 4, 2015 findings of fact and conclusions of law, has aptly reviewed both parties' claims and disposed of all arguments on the merits. We have reviewed the parties' briefs, the

relevant law, the certified record, and the well-written opinion of the Honorable John M. Younge. We have determined that the trial court's opinion, as well as its findings of fact and conclusions of law supporting the March 4, 2015 verdict, comprehensively disposes of both the Kopacz Appellants and ICC Appellants issues on appeal, with appropriate references to the record and without legal error. Therefore, we will affirm based on those decisions. **See** Trial Court's Findings of Fact and Conclusions of Law, dated 3/4/15; Trial Court Opinion, dated 9/22/15.

Judgment affirmed.


Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/15/2016

- 4 -

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CIVIL TRIAL DIVISION

| | |
|---|---|
| INVESTORS COMMERCIAL CAPITAL, LLC<br>Servicing Agent for The Bank<br><br>Plaintiff,<br>v.<br><br>UNKNOWN HEIRS, DEVISEES, SUCCESSORS,<br>PERSONAL REPRESENTATIVES, ASSIGNS OF, AND<br>ALL PERSONS, FIRMS, OR ASSOCIATIONS<br>CLAIMING RIGHT, TITLE, OR INTEREST FROM OR<br>UNDER, HENRY A. KOPACZ, DECEASED, as Mortgagor<br><br>and<br><br>KOPACZ IRREVOCABLE FAMILY TRUST, as Obligor,<br>Real Owner, and *Terre-Tenant*<br>Defendants. | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>MAY TERM, 2012<br><br>No. 01837 |

**FINDINGS OF FACT AND
CONCLUSIONS OF LAW**

Younge, J.                                                              March 4, 2015

I.    Findings of Fact.

a.  Henry and Mary Kopacz's Relationship with Michael Kwasnik.

1.      Henry Kopacz ("Henry") and Mary Kopacz ("Mary"), husband and wife, had Michael Kwasnik ("Kwasnik") prepare their will in December 1999. (Foley, p. 95:11-21)[1]

2.      Throughout the years Henry and Mary continued to have Kwasnik perform legal services for them, including having him prepare a trust for them in 2003. (Stipulated Fact No. 5; Joint Ex. 2)[2]

---

[1] "Foley" refers to the February 3, 2015 trial testimony of Patricia Foley.
[2] "Joint Ex. __" refers to the Joint Exhibits referenced in and attached to the Stipulated Facts submitted at trial.

1

3.   Henry and Mary also elected to invest with Kwasnik; both invested in Liberty Bell Bank and Mary invested in Liberty State Benefits Company. (Foley, p. 104:23-105:12)

4.   Henry and Mary appointed Kwasnik's law firm, who appointed Kwasnik, as the Trustee of their Inter Vivos Irrevocable Family Trust (the "Kopacz Trust"), and gave Kwasnik wide latitude regarding investment and management of the Trust's assets.   (Joint Ex. 2; Stipulated Fact No. 6)

5.   The Kopacz Trust has one asset -- a commercial office building located at 1422-26 Callowhill Street, Philadelphia, PA (the "Property"). (Foley, p. 91:23-92:4).

6.   The Kopacz Trust took title to the Property by way of deed dated October 24, 2006 and recorded with the Commissioner of Records, City of Philadelphia on March 21, 2007. (Stipulated Fact No. 4; Joint Ex. 1).

7.   Henry and Mary leased office space at the Property to Kwasnik's law firm and Liberty State Benefits. (Foley, p. 105:13-25)

**b. The Property.**

8.   The Property is a loft-type building, five stories high with a basement and is approximately 28,000 square feet. (Foley, p. 107:8-12)

9.   The Kopacz Trust has not been paying property taxes on the Property, and the current outstanding taxes total $213,750.67. (Sharer 2/2/15, p. 90:9-20)[3]

10.   There have been no tenants at the Property since approximately November 2011. (Foley, p. 108:14-16)

11.

---

[3] "Sharer 2/2/15" refers to the February 2, 2015 trial testimony of Barry Sharer ("Sharer"). "Sharer 2/3/15" refers to the February 3, 2015 trial testimony of Barry Sharer. Sharer is Plaintiff's managing member and one of its owners. (Sharer 2/2/15, p. 56:21-24)

2

## c. The Loan.

### i. The Initial $850,000 Advance.

12. Henry intended to borrow $850,000 secured by the Property in December 2005 for estate planning purposes. (Foley, p. 108:17-109:3)

13. Henry and Mary were in good health in November and December, 2005. (Foley, p. 114:17-19)

14. As of December 2005, Henry's and/or Mary's experience borrowing money included borrowing money in connection with the purchase of the Property and obtaining a business line of credit for their business, Creative Book Manufacturing. (Foley, p.106:2-13)

15. The concept of borrowing $850,000 secured by the Property was discussed at a meeting in November 2005 at Henry's and Mary's New Jersey residence attended by Kwasnik, Henry and Patricia Foley ("Foley"), Henry's and Mary's daughter. (Foley, p. 108:17-109:3)

16. Foley had no idea whether Henry discussed this meeting, or the concept of borrowing money secured by the Property, with Mary. (Foley, p. 109:11-16)

17. Foley did confirm that all household financial decisions were made by Henry, and that she was not aware of a single instance where Mary made financial decisions for the household. (Foley, p. 110:5-12)

18. Plaintiff is a private money lender. (Sharer 2/2/15, p. 56:8-17)

19. Prior to advancing the $850,000, Plaintiff was presented with a letter dated November 29, 2005 from Kwasnik to Plaintiff's attorney, Edward Paul ("Paul"), which stated that the $850,000 would be (i) used to reduce estate taxes, (ii) pay off a lien against the Property held by FirstTrust Bank, and (iii) invested. (Joint Ex. 10; Sharer 2/2/15, p. 60:6-17)

3

20. Defendants presented no evidence that Henry and/or Mary did not see the November 29, 2005 letter prior to December 2, 2005, or that the letter misstates what they were told about the loan transaction. (Foley, p. 110:23-111:19)

21. Prior to advancing any funds secured by the Property, Sharer inspected the Property. (Sharer 2/2/15, p. 92:16-93:3)

22. Foley was at the Property when Sharer inspected the Property and explained that he was looking to make a loan against the Property. (Sharer 2/2/15, p. 92:16-93:3)

23. At a closing on December 2, 2005, Plaintiff delivered the sum of $850,000 to Constitution Title. (Plaintiff's Ex. 8, Sharer 2/2/15, p. 63:10-20, 68:9-69:4)

24. Defendants presented no evidence suggesting that Henry and/or Mary did not want the $850,000 distributed as reflected in the December 2, 2005 Settlement Statement. (Joint Ex. 12, Foley, p. 112:11-114:15)

25. $111,760.48 of the $850,000 was used to pay off a previously existing mortgage lien recorded against the Property in favor of FirstTrust Bank. (Joint Ex. 12; Sharer 2/2/15, p. 68:9-16; Foley, p. 111:21-112:10)

26. Foley obtained the FirstTrust payoff information. (p. 111:21-112:10)

27. $666,651.49 of the $850,000 was delivered to Kwasnik's trust account. (Defendants' Ex. 15)

28. Defendants presented no evidence regarding what Henry and Mary wanted done with the $666,651.49, except for the document creating the Kopacz Trust, which granted Kwasnik, as the Trustee, wide powers to invest the Kopacz Trust's assets. (Joint Ex. 2)

29. It is entirely possible Henry and Mary wanted the $666,651.49 delivered to Kwasnik's trust account for investment purposes. (Foley p. 115:15-117:3)

4

30.     The $850,000 advance was made pursuant to a Power of Attorney from Henry A. Kopacz and Mary J. Kopacz to Michael Kwasnik, Esquire dated November 25, 2005 (the "First Power of Attorney"). (Sharer 2/2/15, p. 60:6-17, 65:6-19, 98:7-17; Stipulated Fact Nos. 20, 21; Joint Ex. 11; Buckley, p. 10:7-9, 11:10-14, 11:24-13:5)[4]

31.     The First Power of Attorney appointed Kwasnik as attorney-in-fact to:

> (a) attend the closing of a commercial/residential loan in the amount of approximately $850,000 secured with the real property located at 1422 Callowhill Street, Philadelphia, Pennsylvania, presently scheduled for closing and to complete that transaction in its entirety which would include executing all closing documents necessary to encumber this real property. (Joint Ex. 11)

### ii.  The Additional $150,000 Advance.

32.     After the initial $850,000 advance on December 2, 2005, Plaintiff was asked to advance an additional $150,000 secured by the Property. (Sharer 2/2/15, p. 70:16-22)

33.     Plaintiff agreed to advance an additional $150,000, and at a closing on December 30, 2005, Plaintiff delivered $150,000 to Constitution Settlement Service. (Plaintiff's Ex. 16, Sharer 2/2/15, p. 73:18-24)

34.     Defendants presented no evidence at trial that Henry and/or Mary did not intend to borrow the additional $150,000.00 secured by the Property for a total of $1,000,000. (Foley, p. 120:16-23)

35.     Defendants presented no evidence suggesting that Henry and/or Mary did not want the $150,000 distributed as reflected in the December 30, 2005 Settlement Statement. (Joint Ex. 16, Foley, p. 121:20-24)

---

[4] "Buckley" refers to the November 21, 2013 deposition testimony of Timothy Buckley, Esquire.

36. $140,470.99 of the $150,000 was delivered to Kwasnik's trust account. (Defendants' Ex. 24)

37. Defendants presented no evidence regarding what Henry and Mary wanted done with the $140,470.99 except for the document creating the Kopacz Trust, which granted Kwasnik, as the Trustee, wide powers to invest the assets of Trust. (Foley, p. 122:7-10; Joint Ex. 2)

38. It is entirely possible Henry and Mary wanted the $140,470.99 delivered to Kwasnik's trust account for investment purposes. (Foley p. 122:11-14)

39. The additional $150,000 advance was made pursuant to a Power of Attorney from Henry A. Kopacz and Mary J. Kopacz to Michael Kwasnik, Esquire dated December 10, 2005 (the "Second Power of Attorney"). (Sharer 2/2/15, p. 72:6-19; Stipulated Fact No. 23; Joint Ex. 13; Buckley, p. 22:20-23:3, 23:16-24:7)

40. The Second Power of Attorney appointed Kwasnik as attorney-in-fact to:

> (a) attend the closing of a commercial/residential loan not to exceed 70% of the loan to value of the real property located at 1422 Callowhill Street, Philadelphia, Pennsylvania, presently scheduled for closing and to complete that transaction in its entirety which would include executing all closing documents necessary to encumber this real property. (Joint Ex. 13)

41. Plaintiff understood there was sufficient value in the Property to support the additional $150,000 advance for a total of $1,000,000. (Plaintiff's Ex. 5)

42. At the time Plaintiff advanced the $1,000,000 it understood the Property was worth approximately $2,200,000 based on a November 23, 2005 appraisal. (Plaintiff's Ex. 5; Sharer 2/2/15, p. 61:9-62:10)

6

43. The appraiser was well known to Plaintiff and had been used by Plaintiff in the past. (Sharer 2/3/15, p. 15:21-16:3)

44. In deciding whether to advance the $1,000,000, Plaintiff's primary consideration was the value of the Property. (Sharer 2/2/15, p. 56:15-17, 61:4-8; Sharer 2/3/15, p. 6:15-25, 7:9-13)

45. Foley found out that the Loan amount was $1,000,000 after Henry passed away. (Foley, p. 118:13-21)

46. Upon learning that the Loan amount was $1,000,000 Foley discussed the matter with Kwasnik, in what Foley believed was 2008. (Foley, p. 121:5-10)

47. Other than discussing the matter with Kwasnik, Foley did nothing to further investigate the Loan. (Foley, p. 121:11-15)

48. Foley specifically did not discuss the Loan or the Loan amount with Mary. (Foley, p. 118:22-119:2, 119:120:4).

### iii. The Note and Mortgage.

49. Plaintiff's total advance of $1,000,000 (the "Loan") was evidenced by a Promissory Note dated December 30, 2005, executed by Kwasnik as attorney-in-fact for Henry (the "Note"). (Stipulated Fact No. 24; Joint Ex. 14; Sharer 2/2/15, p. 70:23-71:4).

50. In order to finance the Loan, Plaintiff obtained a line of credit from The Bank (now known as Fulton Bank of New Jersey) at an 8% interest per annum, which was then lent to Henry at an interest rate of 16% per annum. (Sharer 2/3/15, p. 8:15-9:17). The line of credit from Fulton Bank remains outstanding.

51.    Repayment of the Note was secured by a Mortgage encumbering the Property dated December 30, 2005, executed by Kwasnik as attorney-in-fact for Henry (the "Mortgage"). (Stipulated Fact No. 24; Joint Ex. 15; Sharer 2/2/15, p. 71:5-25).

52.    The Note and Mortgage were set up for execution by Kwasnik as attorney-in-fact for Henry only because as of December 30, 2005, Plaintiff understood Henry was the sole owner of the Property. (Sharer 2/2/15, p. 65:20-66:13, 73:2-11)

53.    That understanding was based on title work, proof of insurance, the appraisal, tax assessments and Affidavits of Title dated December 2 and December 30, 2005, executed by Kwasnik as attorney-in-fact for Henry, that stated Henry was the "only owner" of the Property and had owned the Property since August 27, 1996. (Joint Exs. 9 and 17; Sharer 2/2/15, p. 65:20-66:13, 72:20-73).

54.    The Mortgage was recorded with the Commissioner of Records, City of Philadelphia on April 25, 2006, bearing Document ID 51426420. (Joint Ex. 15).

55.    Significantly, the deed from Henry to Henry and Mary dated November 25, 2005 was not recorded until February 4, 2006, and Plaintiff did not know about it at the time it advanced the Loan proceeds. (Stipulated Fact No. 12; Joint Ex. 6; Sharer 2/2/15, p. 101:25-106:15)

56.    Had Plaintiff known that the Property had been transferred from Henry to Henry and Mary by deed dated November 25, 2005, Plaintiff would have required that the Note and Mortgage include signatures for Mary. (Sharer 2/2/15, p. 112:9-17)

57.    The Mortgage was also recorded prior to the date the Property was transferred from Henry and Mary to the Kopacz Trust. (Stipulated Fact No. 4; Joint Exs. 1 and 15).

8

### iv. Defendants Have Presented No Evidence of Any Wrongdoing by Plaintiff.

58. Plaintiff was not involved in the distribution of the net Loan proceeds to Kwasnik's trust account, and did not see the checks payable to Kwasnik's trust account. (Sharer 2/3/15, p. 49:7-12, 58:6-59:3)

59. At the time Plaintiff entered into the Loan transaction it understood that Kwasnik had an excellent reputation and was a respected estate attorney who regularly appeared on a radio show, and that he had founded many businesses, including a bank. (Sharer 2/2/15, p. 98:25-99:6, 99:22-23)

60. Defendants have presented no evidence that Plaintiff had anything to do with where the Loan proceeds went or how they were invested by Kwasnik. (Foley, p. 118:4-7, 123:2-5)

61. Defendants have presented no evidence that Plaintiff participated in, or had knowledge of, any fraud committed by Kwasnik designed to steal money from Henry and/or Mary, and Foley testified that she had no such knowledge. (Foley, p. 118:8-12, 123:11-25)

62. Defendants have presented no evidence that if, for any reason, Henry and/or Mary did not intend to borrow $1,000,000 secured by the Property that Plaintiff was so aware, and Foley acknowledged the same. (Foley, p. 120:24-121:3)

63. If any portion of the $1,000,000 did not go where Henry and Mary wanted it to go, no evidence was presented that Plaintiff knew that. (Foley, p. 123:6-10)

64. Foley confirmed there is no reason to believe Plaintiff knew about any of the wrongful conduct Defendants attribute to Kwasnik. (Foley, p. 136:24-137:3)

9

**d. The Loan Default and First Foreclosure Action.**

65. The Loan matured in 2008 without repayment. (Sharer 2/2/15, p. 75:13-76:6)

66. There were additional defaults after maturity. (Sharer 2/3/15, p. 48:7-22)

67. Plaintiff understood that there were insufficient funds to repay the Loan at maturity because efforts to refinance the Loan had failed and investments made with the Loan proceeds were experiencing "financial problems." (Sharer 2/2/13, p. 75:13-76:16; Sharer 2/3/13, p. 26:18-27:16)

68. On August 12, 2009, Plaintiff caused Notices of Default to be served on Henry's Estate and Kwasnik, as attorney-in-fact for Henry, declaring the Loan in default and identifying the amount due as $1,103,142.00. (Plaintiff's Exs. 17, 18, 19; Sharer 2/2/15, p. 76:22-77:24)

69. On November 19, 2009, Plaintiff filed a Complaint for Mortgage Foreclosure in the Philadelphia Court of Common Pleas, Docket No. 091103435, seeking to judicially foreclose on the Mortgage for non-payment (the "2009 Foreclosure Action"). (Stipulated Fact No. 36; Plaintiff's Ex. 20; Sharer 2/2/15, p.78:20-79:13)

70. Foley was aware of the 2009 Foreclosure Action. (Foley, p. 131:10-12)

71. Foley reviewed the complaint filed in the 2009 Foreclosure Action and concluded from that review that the Loan was in default. (Foley, p. 131:13-132:13; Plaintiff's Ex. 20)

72. Foley further understood that the purpose of the 2009 Foreclosure Action was to foreclose on the Property because the Loan was in default. (Foley, p. 132:14-17)

73. Foley discussed the 2009 Foreclosure Action with Kwasnik. (Foley, p. 132:18-21)

74. Other than speaking with Kwasnik, Foley did nothing else to investigate the 2009 Foreclosure Action. (Foley, p. 132:22-133:19)

10

75.     Foley elected not discuss the 2009 Foreclosure Action with Plaintiff. (Foley, p. 133:3-5)

76.     Foley elected not to discuss the 2009 Foreclosure Action with Mary. (Foley, p. 133:6-10)

77.     Foley elected not to forward the 2009 foreclosure complaint to Mary. (Foley, p. 133:11-13)

78.     Foley further never asked Kwasnik if there was any money left over from the Loan to pay the balance claimed due in the 2009 foreclosure complaint. (Foley, p. 133:14-19)

**e. The Forbearance Agreement.**

79.     The 2009 Foreclosure Action was dismissed pursuant a Loan Restructure and Forbearance Agreement dated February 26, 2011 (the "Forbearance Agreement"). (Stipulated Fact Nos. 37 and 38; Joint Ex. 18; Sharer 2/2/15, p. 80:4-81:16, 87:7-12; Foley, p. 133:20-8)

80.     Since Henry died and the Property was apparently transferred to the Kopacz Trust, prior to the filing of the First Foreclosure Action, the "Borrower" under the Note was redefined in the Forbearance Agreement as the Unknown Heirs, Devisees, Successors, Personal Representatives, Assigns Of, and All Persons, Firms, Or Associations Claiming Right, Title, Or Interest From Or Under Henry A. Kopacz, Deceased (collectively, "Henry's Heirs") and the Kopacz Trust (collectively, "Defendants") – the same defendants in this action. (Joint Ex. 18, ¶ 2.B; Sharer 2/2/15, p. 82:14-83:2, 84:13-21)

81.     Kwasnik, as trustee of the Kopacz Trust, signed the Forbearance Agreement. (Stipulated Fact No. 38; Joint Ex. 18; Sharer 2/2/15, p. 80:25-81:6)

82.     At the time he signed the Forbearance Agreement, Kwasnik was Trustee of the Kopacz Trust. (Stipulated Fact Nos. 7 and 38, Joint Ex. 18).

11

83. Barry Sharer signed the Forbearance Agreement for Plaintiff. (Joint Ex. 18; Sharer 2/2/15, p.80:4-81:16)

84. Sharer is Plaintiff's managing member and one of its owners. (Sharer 2/2/15, p. 56:21-24)

85. At the time Plaintiff signed the Forbearance Agreement, Plaintiff understood that Kwasnik was authorized to sign the Forbearance Agreement for the Kopacz Trust. (Sharer 2/2/15, p. 107:5-9)

86. Mary signed the Forbearance Agreement for Henry's Heirs and as "grantor and primary beneficiary" of the Trust. (Stipulated Fact No. 38; Joint Ex. 18)

87. At the time Mary signed the Forbearance Agreement, Kwasnik, Foley and Mary's other daughter, Virginia Valley, were present. (Stipulated Fact No. 38; Foley, p. 134:9-14); Valley, p. 27:22-25)[5]

88. Valley signed as a witness to Mary's execution of the Forbearance Agreement. (Stipulated Fact No. 38; Valley, p. 26:8-27:18).

89. In addition, Kwasnik and Mary signed the Disclosure of Confession of Judgment, at the same time as they signed the Forbearance Agreement. (Joint Exhibit 18).

90. As with the Forbearance Agreement, Valley witnessed Mary's signature on the Disclosure of Confession of Judgment and the execution of the Disclosure of Confession of Judgment occurred in the presence of Foley. (Joint Exhibit 18; Foley, p. 134:9-14; and Valley, p. 27:22-25).

91. Prior to signing the Forbearance Agreement, including the Disclosure of Confession of Judgment, no representations were made to Mary about the terms of the

---

[5] "Valley" refers to the January 23, 2005 trial testimony of Virginia Valley.

Forbearance Agreement or Disclosure of Confession of Judgment that contradict or are inconsistent with the terms actually set forth therein. (Foley, p. 134:14-24; Valley, p. 29:16-30:1)

92.    Mary did not ask to read the Forbearance Agreement, including the Disclosure of Confession of Judgment prior to signing the documents. (Foley, p. 135:20-22).

93.    Mary did not say that she did not want to sign the Forbearance Agreement, including the Disclosure of Confession of Judgment, until she had a chance to read the documents. (Valley, p. 37:20-23)

94.    Although Foley knew about the 2009 Foreclosure Action and that the purpose of the 2009 Foreclosure Action was to foreclose on the Property, she did nothing to stop or dissuade Mary from signing the Forbearance Agreement, including the Disclosure of Confession of Judgment. (Foley, p. 132:14-17, 134:9-14)

95.    Although Valley understood that contracts were important, having attended Pennsylvania State University and obtained a real estate license (that is not currently active), Valley made no attempt to stop or dissuade Mary from signing the Forbearance Agreement, including the Disclosure of Confession of Judgment. (Valley, p. 39:7-13).

**f.  The Mortgage and Forbearance Agreement are in Default.**

96.    Defendants reaffirmed the indebtedness under the Loan in the Forbearance Agreement and the Disclosure of Confession of Judgment and agreed to a schedule for repayment of the sums due. (Joint Ex. 18, ¶s 3.G. and 6; Sharer 2/2/15, p. 86:10-13)

97.    After execution of the Forbearance Agreement, payments were made to Plaintiff. (Sharer 2/2/15, p. 87:13-15)

13

98. Defendants eventually defaulted under the terms of the Loan, as modified by the Forbearance Agreement, by: (1) failing to make monthly interest only payments as required; (2) failing to pay all remaining indebtedness, including principal, interest, and late fees, on or before the Maturity Date of January 31, 2012; and failing to pay real estate taxes, interest and late fees. (Joint Ex. 18; Sharer 2/2/15, p.89:22-90:11)

99. Plaintiff has not received payment under the Mortgage and Forbearance Agreement since March, 2011. (Plaintiff's Ex. 23; Sharer 2/2/15, p. 88:20-90:2)

100. In light of the defaults under the Mortgage and Forbearance Agreement, on May 17, 2012, Plaintiff commenced this action against Defendants seeking to judicially foreclose on the Mortgage. (Complaint)

101. On or about December 30, 2005, Plaintiff executed an Assignment of Note and Mortgage, assigning the Note and Mortgage to The Bank. (Plaintiff's Ex. 27; Sharer 2/2/15, p. 74:17-24)

102. Plaintiff commenced this action as servicer for The Bank. (Sharer 2/2/15, p. 74:25-75:6)

103. On or about June 10, 2014, The Bank, now known as Fulton Bank of New Jersey, executed a Discharge of Assignment of Note and Mortgage. (Plaintiff's Ex. 29; Sharer 2/2/15, p. 75:7-12)

104. As a result, Plaintiff is the current holder of the Note and Mortgage. (Plaintiff's Ex. 29)

14

105. Pursuant to the Note and Mortgage, with due credit being given for all payments made thereon[6], as of February 2, 2015, the following sums are due and owing to Plaintiff:

| | | |
|---|---|---|
| a. | $1,000,000.00 | Principal |
| b. | $867,444.32 | Interest |
| c. | $24,666.79 | Late Fees |
| d. | $210,392.51 | Attorneys' Fees and Costs[7] |
| | $2,102,503.60 | Balance |

106. In addition, interest, late fees and attorneys fees' continue to accrue. Interest accrues at the rate of $444.44 per day. There are also unpaid real estate taxes, interest and penalties due and owing in the amount of $213,750.67. (Joint Exs. 14, 15, 18; Sharer 2/2/15, p. 90:3-11)

## II. Conclusions of Law.

### a. Plaintiff Has Demonstrated Its Right to Foreclose on the Mortgage as Reaffirmed by the Forbearance Agreement.

107. To prevail herein, Plaintiff must demonstrate that it has an enforceable mortgage that is in default. *See* Pa.R.C.P. 1147.

108. Plaintiff has shown:

a. There is an enforceable Mortgage[8];

b. The Mortgage was properly recorded;

c. Defendants have defaulted on the payments required by the Mortgage and Note;

---

[6] The Court recognizes that Defendants have paid approximately $629,000.00 since December 30, 2005 as interest on the Note. However, the Court also recognizes that Plaintiff borrowed the sum of $1,000,000.00 from The Bank (now known as Fulton Bank of New Jersey) to finance the Loan at the rate of 8% per annum, which has continued to accrue over the past nine (9) years.

[7] These are the attorneys' fees and costs incurred through February 10, 2015. Plaintiff submits herewith Affidavits of Services identifying the attorneys' fees and costs incurred through February 10, 2015.

[8] Whatever defects may have existed concerning the original Note and Mortgage were waived and released by Defendants by way of the fully executed Forbearance Agreement, as more fully explained below.

d. Defendants have failed to pay interest due on the obligation; and

e. The recorded Mortgage was in a specified amount.

*Cunningham v. McWilliams*, 714 A.2d 1054, 1057 (Pa. Super. Ct. 1998); *Landau v. Western Pennsylvania National Bank*, 445 Pa. 217, 225-26, 282 A.2d 335, 340 (1971).

109. Moreover, due credit has been given for all payments made by Defendants from 2005 to the present.

110. As a result, the Plaintiff is entitled to judgment in foreclosure on the Note and Mortgage against the Kopacz Trust, as obligor and as *terre-tenant*, in the amount of

| | | |
|---|---|---|
| a. | $1,000,000.00 | Principal |
| b. | $867,444.32 | Interest |
| c. | $24,666.79 | Late Fees |
| d. | $210,392.51 | Attorneys' Fees and Costs |
| | $2,102,503.60 | Balance |

111. In addition to interest, late fees, and attorneys' fees there are outstanding real estate taxes in the amount of $213,750.67. The total amount due and owing Plaintiff is $2,316,254.20.

112. The Court finds that the attorneys' fees and costs, as set forth in the Plaintiffs' Affidavits of Services, filed contemporaneously with its Proposed Findings of Fact and Conclusions of Law, are reasonable and were necessary in this matter. This matter was a significantly complex matter to warrant recovery of the attorneys' fees and costs actually incurred. Furthermore, the Note, Mortgage, and Forbearance Agreement, as discussed below, provide for recovery of actual attorneys' fees and costs incurred by Plaintiff in enforcing the terms of those agreements.

16

113. The Mortgage is in default by reason of, among other things, the failure to pay the sums due thereunder since and the failure to pay the taxes due. (Plaintiff's Ex. 23; Sharer 2/2/15, p. 88:20-90:2)

114. Furthermore, because the Mortgage had been recorded on April 25, 2006, prior to the time the Kopacz Trust took title to the Property on October 24, 2006, the Kopacz Trust was aware of the outstanding Mortgage and Note and the Kopacz Trust is the *terre-tenant* and is therefore obligated to satisfy the Note and Mortgage.

115. In addition, as Kwasnik was the Trustee of the Kopacz Trust at the time the Property was transferred to the Kopacz Trust, and he acted as the "attorney-in-fact" for Henry and Mary Kopacz at the time the Mortgage and Note were executed and recorded, it cannot be disputed that the Kopacz Trust was aware of the Mortgage and Note at the time it took title to the Property. (Joint Exs. 1, 2, 14, 15, and 18).

116. In the event the Kopacz Trust does not satisfy the Note and Mortgage, the Plaintiff has the right to seize and sell the Property. *Levitt v. Patrick*, 2009 PA Super 117, ¶ 31, 976 A.2d 581, 593 (2009) (citing *Heaney v. Riddle*, 343 Pa. 453, 455, 23 A.2d 456, 458 (1942); *Mancine v. Concord-Liberty Sav. & Loan Ass'n*, 299 Pa. Super. 260, 268, 445 A.2d 744, 748 (1982); and *U. S. Steel Homes Credit Corp. v. S. Shore Dev. Corp.*, 277 Pa. Super. 308, 312, 419 A.2d 785, 788 (1980).

117. Plaintiff has shown the necessary requirements entitling it to judgment in foreclosure and for a sum certain against the Kopacz Trust and all Defendants. Accordingly, judgment in favor of Plaintiff must be entered, unless Defendants can establish a viable defense.

17

**b.** **Defendants Have Not Presented Any Evidence to Rebut Plaintiff's Right to Relief Under the Forbearance Agreement.**

118.    Based on arguments raised at trial and in Defendants' Pre-Trial Findings of Fact and Conclusions of Law, and arguments previously made by Defendants herein, Plaintiff anticipates that Defendants will argue that the Mortgage is unenforceable for one or more of the following reasons:

a. The First and Second Powers of Attorney (collectively, the "Powers of Attorney") were not executed by Henry and/or Mary;

b. Kwasnik had power of attorney to execute documents jointly on behalf of Henry and Mary, not on behalf of Henry only;

c. The Mortgage violates the statute of frauds because it was not signed by or for Mary, even though Mary had an ownership interest in the Property;

d. The Forbearance Agreement does not reaffirm the Mortgage;

e. Plaintiff failed to raise defense to Defendants' New Matter;

f. The interest rate under the Note is "commercially unreasonable;" and

g. Plaintiff lacks standing to enforce the Mortgage.

119.    The Forbearance Agreement contained a waiver and release clause under the terms of which the Defendant waived all of the above defenses. (Joint Ex. 18)

**i.** **Defendants Released the Defenses Asserted Herein.**

120.    The Forbearance Agreement provides:

Borrower confirms, acknowledges and agrees that it has **no defenses, charges, claims, demands, pleas or offsets whatsoever, in law or equity (collectively "Claims")** to the indebtedness evidenced by the Note, or in the Action. (emphasis added) (Joint Ex. 18, ¶ 3.E; Sharer, p. 85:13-86:1)

18

121. The Forbearance Agreement further provides:

> Release. **Borrower, on behalf of itself and its successors and assigns, hereby acknowledges and agrees that it has no Claims** (as defined in subparagraph F [sic] above) **against the Lender or Lender's officers, directors, employees, attorneys, representatives, predecessors, successors, and assigns with respect to the indebtedness evidence by the Note or to the** Action, or otherwise, and that **if Borrower now has, or ever did have, any Claims against the Lender or the Lender's officers, directors, employees, attorneys, representatives, predecessors, successors, and assigns, whether known or unknown, at law or in equity, from the beginning of the world through this date and through the time of execution of this Agreement, all of them are hereby expressly waived, and the Borrower hereby releases the Lender and the Lender's officers, directors, employees, attorneys, representatives, predecessors, successors, and assigns from any liability therefore.** Borrower specifically waives all defenses interposed in its Answer to the Action. (emphasis added) (Joint Ex. 18, ¶ 3.F; Sharer, p. 86:2-9)

122. All of the defenses asserted by Defendants could have been asserted prior to execution of the Forbearance Agreement.

123. Therefore, all of Defendants' defenses have been released under the terms of the Forbearance Agreement.

124. "It is well-established under [Pennsylvania law] 'that a release is the giving up or the abandoning of a claim or right to the person against whom the claim exists or the right is to be enforced or exercised.'" *Tindall v. Friedman*, 2009 PA Super 50, 970 A.2d 1159, 1165 (Pa. Super. Ct. 2009) (quoting *Complaint of Bankers Trust Co. v. Bethlehem Steel Corp.*, 752 F.2d 874, 883 (3d Cir. 1984)).

125. Releases are interpreted according to traditional principles of contract law and as such "a release not procured by fraud, duress, or mutual mistake is binding between the parties." *Davis ex rel. Davis v. Gov't Employees Ins. Co.*, 2001 PA Super 140, 775 A.2d 871, 875 (Pa.

19

Super. Ct. 2001) (citing *Clark v. Philadelphia College of Osteopathic Medicine*, 693 A.2d 202, 207 (Pa. Super. Ct. 1997), appeal granted 550 Pa. 697, 705 A.2d 1303 (1997), appeal dismissed as improvidently granted, 557 Pa. 487, 734 A.2d 859 (1999); *Strickland v. University of Scranton*, 700 A.2d 979, 986 (Pa. Super. Ct. 1997)).

126. The Pennsylvania Supreme Court stated in *Buttermore v. Aliquippa Hosp.*, 522 Pa. 325, 329-30, 561 A.2d 733, 735 (1989):

> Parties with possible claims may settle their differences upon such terms as are suitable to them. They may include or exclude terms, conditions and parties as they can agree. In doing so, they may yield, insist or reserve such right as they choose. If one insists that to settle, the matter must end then and forever, as between them, they are at liberty to do so. They may agree for reasons of their own that they will not sue each other or any one for the event in question. However improvident their agreement may be or subsequently prove for either party, their agreement, absent fraud, accident or mutual mistake, is the law of their case.

127. Additionally, a "valid release is an absolute bar to recovery for everything included in the release..." *Dorenzo v. Gen. Motors Corp.*, 334 F. Supp. 1155, 1156 (E.D. Pa. 1971) (quoting *Mannke v. Benjamin Moore & Co.*, 375 F.2d 281, 285 (3d Cir.1967)).

128. The Forbearance Agreement was executed in settlement of the 2009 Foreclosure Action Plaintiff filed against Defendants. In consideration of Plaintiff's promise to forbear from enforcing certain rights, Defendants made certain promises, including an unequivocal and permanent release of claims and defenses to the validity or enforceability of the documents evidencing the Loan.

129. Each of the defenses asserted by Defendants herein pertaining to the validity and enforceability of the documents evidencing the Loan existed as of the date of the Forbearance Agreement and were therefore released.

20

130. Defendants' argument that the release set forth in the Forbearance Agreement is not enforceable because it was procured by fraud is rejected.

131. Any alleged fraud that Kwasnik may have committed against the Kopacz Trust does not prevent Plaintiff from enforcing the terms of the Forbearance Agreement.

132. Under Pennsylvania law, Defendants cannot avoid their obligations to Plaintiff under the Forbearance Agreement unless they can show that the Plaintiff had **actual** knowledge that Kwasnik was committing a breach of trust or had **actual** knowledge that Kwasnik's conduct amounted to bad faith.

133. 20 Pa.C.S.A. § 7790.2(a.1) provides:

> **Protection from liability.** -- Unless a person assisting or dealing with a trustee has **actual knowledge** that the trustee is committing a breach of trust or has knowledge of such facts that the trustee's conduct amounts to bad faith, the person:
> (1) may assume without inquiry the existence of trust powers and their proper exercise by the trustee;
> (2) is not bound to inquire whether the trustee has power to act or is properly exercising the power; and
> (3) **is fully protected in dealing with the trustee as if the trustee possessed and properly exercised the powers the trustee purports to exercise.** (emphasis added.)

134. The Probate, Estates and Fiduciaries Code does not define "actual knowledge."

135. The Probate, Estates and Fiduciaries Code generally provides that a person has "knowledge" when:

> **(a) When person has knowledge.**--For the purposes of this chapter and subject to subsection (b), a person has knowledge of a fact involving a trust if the person has:
> (1) actual knowledge of it;
> (2) received a notice or notification of it; or
> (3) reason to know it from all the facts and circumstances known to the person at the time in question.

21

*See* 20 Pa. Cons. Stat. § 7704(a).[9]

136. There is no evidence that Plaintiff had "actual knowledge" that Kwasnik committed a breach of trust or had actual knowledge that Kwasnik's conduct amounted to bad faith.

137. The Kopacz Trust was not a party to the Loan Extension Agreement. (Defendants' Ex. 26)

138. More significantly, there is absolutely no evidence that Plaintiff had any reason to believe that Kwasnik was committing a breach of trust by signing the Forbearance Agreement.

139. To the contrary, Plaintiff had no reason to believe Kwasnik was not authorized to sign the Forbearance Agreement for the Kopacz Trust. (Sharer 2/3/15, p. 47:14-18)

140. The signature block for the Kopacz Trust appears on the same page of the Forbearance Agreement signed by Mary and witnessed by Valley, and identifies Kwasnik as the individual who will be signing the Forbearance Agreement for the Kopacz Trust. (Joint Ex. 18)

141. Given that Mary (a grantor), Valley (a beneficiary) and Foley (another beneficiary who also was present when Mary signed) had no issue with Kwasnik signing the Forbearance Agreement for the Trust, Plaintiff had no reason to doubt Kwasnik's authority to sign the Forbearance Agreement. (Joint Exs. 2 and 18; Foley, p. 90:18-21)

142. Plaintiff understood Kwasnik was Trustee of the Kopacz Trust. (Sharer, p. 107:5-9)

---

[9] Defendants' citation to *Commonwealth v. Maloney*, 876 A.2d 1002, 1007 (Pa. Super. Ct. 2005) for the proposition that "actual knowledge" can be inferred by an overwhelming accumulation of negligent, willful or willfully negligent conduct is misplaced. *Maloney* discussed satisfaction of the actual knowledge *mens rea* requirement in a criminal case involving the furnishing of liquor to a minor. It had nothing to do with establishing "actual knowledge" under the Probate, Estates and Fiduciaries Code.

143. To confirm that Kwasnik was authorized to sign the Forbearance Agreement for the Kopacz Trust, Plaintiff insisted that Mary sign the Forbearance Agreement because Plaintiff believed Mary would know whether Kwasnik was authorized to sign the Forbearance Agreement for the Kopacz Trust. (Sharer 2/2/15, p. 107:24-108:10, 122:14-21, 123:4-124:13)

144. In any event, even if Kwasnik was not authorized under the Trust Agreement to sign the Forbearance Agreement there is no evidence Plaintiff had actual knowledge of that fact.

145. Plaintiff did not see the Trust Agreement prior to execution of the Forbearance Agreement (Sharer 2/2/15, p. 122:7-9)

146. As confirmed under 20 Pa.C.S.A. § 7790.2(b):

**No requirement to inquire.** -- A person other than a beneficiary who in good faith deals with a trustee is not required to inquire into the extent of the trustee's powers or the propriety of their exercise.

147. Furthermore, Plaintiff is a private money lender. Defendants have not produced any evidence, nor have Defendants offered any expert testimony, that Plaintiff, as a private money lender, owed any duty of care to Defendants (other than funding the Loan), or that Plaintiff deviated from acceptable underwriting standards for private money lenders, when Plaintiff funded the Loan.

148. Defendants have not shown that Plaintiff had any actual knowledge that Kwasnik was acting in bad faith, nor have Defendants shown that Plaintiff had actual knowledge that Kwasnik was acting outside the authority granted to him by the Trust Agreement when he signed the Forbearance Agreement (along with Mary). See 20 Pa.C.S.A. §7790.2(a.1). Furthermore, the Plaintiff has no affirmative duty to inquire as to the extent of Kwasnik's powers under the Trust Agreement. See 20 Pa.C.S.A. §7790.2(b). As a result, the Kopacz Trust is bound by the representations and obligations set forth in the Forbearance Agreement, including the

23

reaffirmation of the debt, declaration of no set-off, waivers, and releases contained therein. (Joint Ex. 18)

149. Having signed the Forbearance Agreement, Defendants are bound by the language therein, including the release. *Montgomery v. Levy*, 406 Pa. 547, 550, 177 A.2d 448, 450 (1962) (A signatory of a contract is legally bound to know the terms of the contract of which he or she signs).

150. "Contracting parties are normally bound by their agreements, without regard to whether the terms thereof were read and fully understood and irrespective of whether the agreements embodied reasonable or good bargains." *Simeone v. Simeone*, 525 Pa. 392, 400, 581 A.2d 162, 165-66 (1990) (citing *Standard Venetian Blind Co. v. American Empire Insurance Co.*, 503 Pa. 300, 305, 469 A.2d 563, 566 (1983) (failure to read a contract does not warrant avoidance or nullification of its provisions); *Estate of Brant*, 463 Pa. 230, 235, 344 A.2d 806, 809 (1975); *Bollinger v. Central Pennsylvania Quarry Stripping & Construction Co.*, 425 Pa. 430, 432, 229 A.2d 741, 742 (1967) ("Once a person enters into a written agreement he builds around himself a stone wall, from which he cannot escape by merely asserting he had not understood what he was signing."); *Montgomery v. Levy*, 406 Pa. 547, 550, 177 A.2d 448, 450 (1962) (one is legally bound to know the terms of the contract entered)).

151. Defendants signed the Forbearance Agreement and are, therefore, held to its terms.

152. This is particularly significant here because had the 2009 Foreclosure Action proceeded, Mary would have been available to address all of the defenses now raised by Defendants.

24

153. Unfortunately, Mary passed away in 2013 and is no longer available. (Stipulated Fact No. 10)

154. Finally, it is worth noting that "where one of two innocent persons must suffer because of the fraud of a third, the one who has accredited him must bear the loss..." *See Rothman v. Fillette*, 503 Pa. 259, 265, 469 A.2d 543, 545-46 (1983) (citing *Keller v. N.J. Fidelity and Plate Glass Insurance Co.*, 306 Pa. 124, 159 A. 40 (1932); *Mundorff v. Wickersham*, 63 Pa. 87, (1869)); *see also Rykaczewski v. Kerry Home, Inc.*, 192 Pa. Super. 461, 465, 161 A.2d 924, 926 (1960) (finding that "[w]here one of two innocent persons must suffer, the loss should be borne by him who put the wrongdoer in a position of trust and confidence and thus enabled him to perpetrate the wrong"). Simply put, "[o]ur case law has expressed that a principal acting through an agent in dealing with an innocent third party must bear the consequences of the agent's fraud." *Rothman,* 503 Pa. at 265, 469 A.2d at 545.

155. Kwasnik was Henry's and Mary's attorney. (Foley, p. 95:11-21)

156. Henry and Mary appointed Kwasnik as their power of attorney and as Trustee of the Kopacz Trust. (Joint Exs. 2, 11, and 13)

157. Having put Kwasnik in a position to engage in the alleged wrongful conduct, the Kopacz Trust and the heirs of Henry and Mary must bear the consequences of that decision.

158. If Kwasnik stole the Loan proceeds, acted outside his authority as Trustee or committed any other wrongs, Defendants can pursue relief against Kwasnik. *See* 20 Pa.C.S.A. §7782(a) ("A trustee who commits a breach of trust is liable to the beneficiaries affected.").

159. Plaintiff, on the other hand, should not bear the consequences of any wrongs committed by Kwasnik.

25

160. Plaintiff's obligation was limited to funding the Loan, and it fulfilled that obligation by advancing $850,000 on or about December 2, 2005 and $150,000 on or about December 30, 2005. (Stipulated Fact Nos. 13, 22, 24 and 30; Joint Exs. 7, 12, 14 and 16; Plaintiff's Ex. 8 and 16; Sharer 2/2/15, p. 63:10-20, 68:9-69:4, 73:18-24

161. The Powers of Attorney further confirm both Henry **and** Mary intended to borrow money secured by the Property. (Plaintiff Trial Exhibit 3, 13; Joint Exs. 11 and 13; Buckley, p. 10:7-13:5, 22:15-24:7).

### ii. The Forbearance Agreement Reaffirmed the Mortgage.

162. Defendants' argument that the Forbearance Agreement did not "reaffirm" the Mortgage is rejected.

163. The Forbearance Agreement provides at paragraph 3.G "Borrower reaffirms the Indebtedness and acknowledges all the terms and conditions of the Loan Documents." (Joint Ex. 18, ¶¶ 3.G., 6)

164. "Indebtedness" is defined as follows:

> The word "Indebtedness" means and includes without limitation the Loan, together with all other obligations, debts and liabilities of Borrower to Lender, as well as all claims by Lender against Borrower, whether now or hereafter existing; voluntary or involuntary .... (Joint Ex. 18, ¶ 2.F)

165. The term "Loan Documents" is defined to include "all promissory notes, **mortgages** and all other documents, whether now or hereafter existing, executed in connection with Borrower's and Kopacz's Indebtedness to Lender and as they have been or may be modified or amended." (emphasis added) (Joint Ex. 18, ¶ 2.I).

166. The term "Loan" is defined as "the loan extended to Kopacz evidenced by the Note, and originally in the maximum amount of One Million ($1,000,000.00) Dollars, and any

and all other loans and financial obligations from Lender to Kopacz or Borrower, whether now or hereafter existing, and however evidenced." (Joint Ex. 18, ¶ 2.H)

167. The Mortgage and Note were reaffirmed by the Forbearance Agreement.

168. Defendants' argument that the Forbearance Agreement cannot reaffirm the Mortgage because the Mortgage is void is also rejected.

169. As set forth above, the Mortgage is not void under the statute of frauds; however, if it were it could be reaffirmed.

170. "It has long been established that a contract within the statute of frauds will be accorded full legal effect if those who are entitled to the protection of the statute choose to affirm the existence of the contract and recognize it as binding on them." *Sferra v. Urling*, 195 A. 422, 425 (Pa. 1937).

171. Since the statute of frauds is "designed to guard against the fraud and perjury in oral contracts there can be no danger when the contract is admitted, since it is not within the mischief intended to be guarded against." *Id.*

172. Here, any alleged violation of the statute of frauds was lawfully reaffirmed and ratified by the Forbearance Agreement.

173. All parties were aware of the outstanding loan and the pending foreclosure action when the Forbearance Agreement was executed.

174. The Powers of Attorney confirm that both Henry and Mary intended to borrow money secured by the Property. (Plaintiff Trial Exhibit 3, 13: Joint Exs 11 and 13; Buckley, p10:7-13:5, 22:15-24:7).

175. Foley testified that she attended a meeting with Henry and Kwasnik in which borrowing money secured by the Property was discussed. (Foley, p. 108:17-109:3).

27

176. Foley also testified that all household financial decisions were made by Henry, and that she was not aware of a single instance where Mary made financial decisions with in the household. (Foley, p. 110:5-12).

177. Mary (a grantor), Valley (a beneficiary) and Foley (a beneficiary), were present when the Forbearance Agreement was entered into, and they knew that the Forbearance Agreement was executed in connection with a foreclosure action being litigated against the Property based on the loan that was in default.

### iii. The Remaining Defenses Asserted by the Defendants do not Need to be Addressed Because They Did Not Play a Role in this Court's Decision

178. The Defendants entered into a Forbearance Agreement which was critical in this Court's decision to find in favor of the Plaintiff in this matter.

179. As previously discussed, the Forbearance Agreement contained waiver and release clauses that waived all defenses that Defendants could assert in this action.

180. Since the Defendant reaffirmed the mortgage and waived all defenses in this action, there is no need to respond to any of the additional issues or defenses asserted by the Defendants.

28

## VERDICT

*In Rem* judgment in mortgage foreclosure is hereby entered in favor of the Plaintiff and

against the Defendants as follows:

| | |
|---|---|
| Principal of mortgage debt due | $1,000,000.00 |
| Unpaid Interest as of February 2, 2105 | $ 867,444.32 |
| Late Fees | $ 24,666.79 |
| Unpaid Real Estate Taxes, Interest and Penalties | $ 213,750.67 |
| Attorney's Fees | $ 210,392.51 |
| | |
| TOTAL AMOUNT DUE | $2,316,254.29 |

BY THE COURT:

_____
Judge John M. Younge

29

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CIVIL TRIAL DIVISION

| | |
|---|---|
| INVESTORS COMMERCIAL CAPITAL, LLC<br>Servicing Agent for The Bank<br><br>v.<br><br>UNKNOWN HEIRS, DEVISEES, SUCCESSORS,<br>PERSONAL REPRESENTATIVES, ASSIGNS OF, AND<br>ALL PERSONS, FIRMS, OR ASSOCIATIONS<br>CLAIMING RIGHT, TITLE, OR INTEREST FROM OR<br>UNDER, HENRY A. KOPACZ, DECEASED, as Mortgagor<br><br>and<br><br>KOPACZ IRREVOCABLE FAMILY TRUST, as Obligor,<br>Real Owner, and *Terre-Tenant* | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>MAY TERM, 2012<br><br>No. 01837 |

**Opinion**

Younge, J.                                                                      September 22, 2015

Having previously filed *Findings of Fact and Conclusions of Law* (3/4/15), this brief

*Opinion* was authored to address the *Defendants' Statement of Errors Complained of on Appeal*

(6/19/15). It was also drafted to respond to the cross appeal filed by the Plaintiff's in this matter.

**I.     Facts:**

The Plaintiff commenced this matter by filing a civil action Complaint against the

Defendants, the Unknown Heirs, Devisees, Successors, Personal Representatives, Assigns Of,

and All Persons, Firms, Or Associations Claiming Right, Title, Or Interest From Or Under Henry

A. Kopacz, Deceased (collectively the Kopacz Defendants). This is a mortgage foreclosure

action filed on behalf of the Plaintiff, for which the Plaintiff sought to foreclose upon a mortgage

that encumbers real property located at 1422-1426 Callowhill Street, Philadelphia, Pennsylvania.

Investors Commercial Capital Limited Liabili-OPFLD



12050183700223

The subject mortgage was signed by Michael Kwasnik, Esquire pursuant to power of attorney executed by Henry Kopacz and Mary Kopacz appointing Mr. Kwasnik as their power of attorney to borrow money secured by 1422-1426 Callowhill Street. The Mortgage went into default in 2009 prompting the Plaintiff to file a foreclosure action. The 2009 foreclosure action was resolved by way of a loan restructure and forbearance agreement dated February 26, 2011 executed by Mary Kopacz on behalf of Henry's Heirs and Mr. Kwasnik, as trustee of the Trust. Among other things, the forbearance agreement reaffirmed the indebtedness subject to the mortgage and released any and all defenses to the enforcement of the mortgage. The Defendants defaulted under the forbearance agreement prompting the Plaintiff to bring this second foreclosure action.

A bench trial in this mortgage foreclosure action was held on February 2 and 3, 2015 before this Court. On March 4, 2015, this Court issued findings of fact and conclusion of law, and entered an *in rem* judgment in mortgage foreclosure in favor of the Plaintiff and against the Defendants in the amount of $2,316,254.29.

The Defendants filed a motion for post-trial relief following the decision that found in favor of the Plaintiff. This appeal followed this Court's denied their motion for post-trial relief. Interestingly enough, the Plaintiff did not file a motion for post-trial relief, but instead filed a cross appeal from the $2,316,254.29 finding in its favor.

## II. Issues Raised on Appeal: the Concise Statement of Matters Complained of on Appeal Filed by the Defendants

The Defendants filed a concise statement of matters complained of on appeal that raised fourteen (14) separate issues for appellate review. The Defendants raised each issue in the form of a question with a more detailed discussion or explanation of select issues under some of the questions presented for review. Despite the fact that the Defendants filed a robust 1925(b)

2

statement, they in fact raised what could be characterized as two general issues for appellate review. In the interest of judicial economy, this Court re-characterized the questions presented for appellate review into two categories. The first category, category A, is what it characterized as an attack on the factual and legal conclusion reached by this Court in deciding this matter and finding for the Plaintiff. The second category, category B, is what it characterized as an attack on the evidentiary rulings made by this Court—the relevance or irrelevance of evidence considered by this Court in reaching its decision.

The specific questions presented in the 1925(b) statement were as follows:

**First Statement of Error**: Whether the Trial Court erred in determining that the Mortgage, which was executed in the name of only one entireties tenant, was enforceable?

**Second Statement of Error**: Whether the Trial Court erred in determining that the Mortgage, which was executed in the name of only one entireties tenant, was enforceable?

**Third Statement of Error**: Whether the Trial Court erred in determining that Kwasnik had authority, pursuant to power of attorney, to execute the Mortgage?

**Fourth Statement of Error**: Whether the Trial Court erred in placing undue emphasis on the date the deed transferring the Property to Henry Kopacz and Mary Kopacz was recorded?...

**Fifth Statement of Error**: Whether the Trial Court in determining that Kwasnik had authority to execute the Forbearance Agreement on behalf of the Kopacz Irrevocable Family Trust?

**Sixth Statement of Error**: Whether the Trial Court erred in determining that the defense asserted by Defendants were waived in the Forbearance Agreement?

**Seventh Statement of Error**: Whether the Trial Court erred in determining that a void mortgage can be reaffirmed and that the Mortgage was reaffirmed in the Forbearance Agreement?...

**Eighth Statement of Error**: Whether the Trial Court erred in determining that 20 Pa. C.S. Section 7790.2(a.1) of the Pennsylvania Probate, Estate and Fiduciary Code (the "Code") applied in this case and, if so, whether the Trial Court misconstrued and/or misapplied it?...

**Ninth Statement of Error**: Whether the Trial Court erred in determining that the Plaintiff did not waive its Code defense by failing to raise it in its reply to new matter?...

**Tenth Statement of Error**: Whether the Trial Court erred in determining that, under the facts of this case, the burden of Kwasnik's fraud fell upon Defendants?...

**Eleventh Statement of Error**: Whether the Trial Court erred in refusing to take judicial notice of Kwasnik's criminal convictions and license suspension?...

3

**Twelfth Statement of Error:** Whether the Trial Court erred in refusing to permit questioning about the Labriciosa loan?...

**Thirteenth Statement of Error:** Whether the Trial Court erred in refusing to hear Defendant's offers of proof concerning Kwasnik's criminal activities, license suspensions and the Labriciosa loan?

**Fourth Statement of Error:** Whether the Trial Court erred by entering a judgment in mortgage foreclosure against the Defendant, "Unknown Heirs, Devisees, Successors, Personal Representatives, Assigns of, and All Persons, Firms, or Associations Claiming Right, Title or Interest From or Under, Henry A. Kopacz, Deceased, as Mortgagor," when "they" did not execute the Mortgage and do not own the Property?

*Defendants' Statement of Errors Complained of on Appeal* (6/19/15) (questions presented in the Defendants' statement submitted pursuant to 1925(b)).

### A. Defendants' Attack on the Legal and Factual Conclusion Reach by this Court Was Insufficient to Overcome Logical Analysis

The Defendants' attacked the legal and factual underpinning of the judgment entered against them in statements of error numbered one (1) through ten (10) and number fourteen (14) of their statement of errors complained of on appeal. Their attack on the factual findings and conclusions of law reach by this Court was reviewed during post-trial proceedings with the following standard in mind:

> The proper standard of review for an appellate court when examining the lower court's refusal to grant a judgment n.o.v. is whether, when reading the record in the light most favorable to the verdict winner and granting that party every favorable inference there from, there was sufficient competent evidence to sustain the verdict. . . . Questions of credibility and conflicts in the evidence are for the trial court to resolve and the reviewing court should not reweigh the evidence. . . . Absent an abuse of discretion, the trial court's determination will not be disturbed."

*Adamski v. Miller*, 545 Pa. 316, 319, 681 A.2d 171, 173 (1996).

The Pennsylvania Superior Court has stated:

> Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason. Similarly, the trial court abuses its discretion if it does not follow legal procedure.

4

*Lachat v. Hinchcliffe,* 769 A.2d 481, 487 (Pa. Super. 2001).

The Pennsylvania Superior Court has also stated:

Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, [where] the issue ... concerns a question of law, our scope of review is plenary. The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

*Wyatt, Inc. v. Citizens Bank of Pennsylvania,* 976 A.2d 557, 564 (Pa. Super. 2009) (internal citations omitted).

In response to the Defendants allegations of error, this Court offers the *Findings of Fact and Conclusions Law* (3/4/15) that it previously filed in this matter. The *Findings of Fact and Conclusions of Law* (3/4/15) clearly discuss the facts in support of the $2,316,254.29 *in rem* finding that was ultimately entered against the Defendants. The *Findings of Fact and Conclusions of Law* (3/4/15) contain specific citation to the record to illustrate the specific evidence relied upon by this Court in reaching its decision to find in favor of the Plaintiff. The *Findings of Fact and Conclusions of Law* (3/4/15) also contain citation to case law to support each and every legal conclusion reach by this Court. A review illustrates sufficient evidence and legal support for the *in rem* finding in favor of the Plaintiff allowing for mortgage foreclosure against 1422-1426 Callowhill Street.

5

**B.** **The Defendants' Attack on the Relevance or Irrelevance of the Evidence Considere\
by this Court**

The Defendants attacked the evidentiary rulings made by this Court in statements of error eleven (11) through thirteen (13) of the *Defendants' Statement of Errors Complained of on Appeal* (6/19/15). Their attack on the evidentiary rulings made by this Court was simply insufficient to gain the award of a new trial because it focused on evidence that was totally irrelevant in this Court's decision to find in favor of the Plaintiff. When discussing the standard of review for the award of a new trial, the Pennsylvania Supreme Court has stated:

> [W]hen analyzing a decision by a trial court to grant or deny a new trial, the proper standard of review, ultimately, is whether the trial court abused its discretion. Each review of a challenge to a new trial order must begin with an analysis of the underlying conduct or omission by the trial court that formed the basis for the motion. There is a two-step process that a trial court must follow when responding to a request for new trial. First, the trial court must decide whether one or more mistakes occurred at trial. These mistakes might involve factual, legal, or discretionary matters. Second, if the trial court concludes that a mistake (or mistakes) occurred, it must determine whether the mistake was a sufficient basis for granting a new trial. The harmless error doctrine underlies every decision to grant or deny a new trial...

*Harman ex rel. Harman v. Borah*, 756 A.2d 1116, 1121 (Pa. 2000).

To establish a right to relief, the Defendant would have to establish that the evidentiary rulings made by this Court in some way influence the outcome of trial. Simply put, no prejudicial error occurred when this Court declined to take official judicial notice of irrelevant facts from the unrelated pending or potential criminal or civil actions that were brought, or might be brought against, Michael Kwasnik, Esquire. Mr. Kwasnik was not a party to this action and evidence of his misconduct in relationship to matters that he handled for clients other than the Defendants' in the case *sub judice* were largely irrelevant to the disposition of this matter.

This Court was well aware of Mr. Kwasnik's significant history of misconduct and the fact that he had lost his license to practice law. Although it declined to make a specific finding

6

of legal malpractice when it found in favor of the Plaintiff, this Court understood the Defendants contention that Mr. Kwasnik had engaged in misconduct when he represented the Defendants in the underlying matter. The finding in favor of the Plaintiff was based primarily on the fact that the Defendants and, specifically, Mary Kopacz had signed a forbearance agreement which acknowledge that they had mortgaged 1422-1426 Callowhill Street to secure a monetary loan. The forbearance agreement also reaffirmed their obligation to satisfy that loan. The overwhelming evidence supporting the verdict was discussed in such detail in this Court's *Findings of Fact and Conclusions of Law* (3/4/15) that there is no need to reiterate herein.

III.    **The Plaintiff Waived All Issues Averred in its Cross Appeal**

The Plaintiff waived all issues averred in the notice of appeal that it filed more than six weeks after this Court filed its decision in this matter. A review of the docket illustrates that the Plaintiff completely failed to file a motion for post-trial relief from the favorable finding entered by this Court. The Plaintiff's failure to file a motion for post-trial relief was fatal to its ability to proceed with issues on appeal.

Pennsylvania Rule of Civil Procedure 227.1(b)(2) requires, "Post-trial relief may not be granted unless the grounds therefore, are specified in the motion. The motion shall state how the grounds were asserted in pre-trial proceedings or at trial. Grounds not specified are deemed waived unless leave is granted upon cause shown to specify additional grounds." Pennsylvania Rule of Civil Procedure 227.1(c)(2) also states, "Post-trial motions shall be filed within ten days after . . . the filing of a the decision in the case of a trial without a jury."

Generally pled boilerplate allegations in post-trial motions are not sufficient to preserve issues for post-trial review and these claims are waived for the purpose of review. Examples of boilerplate allegations are; "the weight of the evidence does not support the verdict" or "the

7

weight of the law does not support the verdict." *Cherry v. Willer*, 317 Pa. Super. 58, 463 A.2d 1082 (1983); *Carnicelli v. Bartram*, 289 Pa. Super. 424, 433 A.2d 878 (1981) (holding that the trial court abused its discretion by conducting a *sua sponte* review of boiler plate post-trial motions because Pa. R.C. P. 227.1 requires that an alleged trial error must be stated with specificity so that the trial court is given the opportunity to write a meaningful opinion and the party opposing the motion is given an adequate opportunity to respond).

## IV.    Conclusion:

For the above reasons, this Court denied the Defendants motion for post-trial relief and declined to otherwise upset its finding in favor of the Plaintiff.

By the Court:

Judge John M. Younge

8